UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

TONI CAIAZZO NEFF,                          :
                        Plaintiff,          :
                                            :
            v.                              :        No. 5:18-cv-1826
                                            :
PKS HOLDINGS, LLC, et al.,                  :
                        Defendants.         :
_____

**O P I N I O N**
**Defendants' Motion to Dismiss, ECF No. 12—Granted**

**Joseph F. Leeson, Jr.**                               **August 8, 2019**
**United States District Judge**

## I.      INTRODUCTION

Plaintiff Toni Caiazzo Neff was employed by Defendant Purshe Kaplan Sterling

Investments, Inc. (hereafter, "PKS") as a compliance officer and claims she was fired in

retaliation for reporting potential securities law violations to the Financial Industry Regulatory

Authority (FINRA).

Caiazzo Neff asserts four claims against eleven defendants, including PKS and several

related entities and seven individuals with a supervisory relationship to Caiazzo Neff. She alleges

retaliation under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, *see*

15 U.S.C. § 78u-6(h), and Pennsylvania state law claims for wrongful termination in violation of

public policy, breach of the implied covenant of good faith and fair dealing, and intentional

infliction of emotional distress.

Defendants move to dismiss Caiazzo Neff's claims pursuant to Federal Rules of Civil

Procedure 12(b)(2) and 12(b)(6), challenging the Court's personal jurisdiction over Defendants

and arguing that the Amended Complaint fails to state a claim for which relief can be granted.

For the reasons set forth below, the Court finds that it lacks personal jurisdiction over all Defendants except PKS and Katherine Flouton. Additionally, the Amended Complaint fails to state a claim under the Dodd-Frank Act or Pennsylvania state law. Accordingly, Defendants' motion is granted.

## II.     BACKGROUND[1]

Defendant Purshe Kaplan Sterling Investments, Inc. (hereafter, "PKS"), is a registered broker-dealer and FINRA member organization. Am. Compl. ¶ 9.[2] Caiazzo Neff was employed by PKS as a compliance officer beginning in March 2014 based on her experience in the finance industry. Am. Compl. ¶ 30. She was hired to work primarily from a home office in Pennsylvania, and frequently performed audits at Defendants' Pennsylvania business locations. *Id.* at ¶¶ 31-33. Defendants provided equipment for Caiazzo Neff's home office and communicated with her while she worked there.  *Id.* at ¶ 34. Caiazzo Neff's responsibilities included reviewing new product offerings, regulatory disclosures, and cybersecurity procedures, performing cybersecurity audits at branch office locations, and conducting monthly and quarterly compliance reviews, among other duties. *Id.* at ¶¶ 38-39.

In January 2016, Caiazzo Neff raised concerns about a particular product offering and did not recommend that the product be added to the PKS platform based upon her finding that members of senior management at the sponsor of the product were using investor funds for personal business interests. *Id.* at ¶ 42. The product was subsequently re-reviewed, without

---

[1]     The following facts are taken from the amended complaint and are set forth as if true solely for the purpose of analyzing the motion to dismiss. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court includes only the facts relevant to its discussion of Caiazzo Neff's claims.

[2]     Defendant PKS Holdings, LLC wholly owns subsidiary Defendant PKS. Am. Compl. ¶ 8.

Caiazzo Neff's input, and Caiazzo Neff was instructed by colleagues not to raise concerns about the product before it was offered to purchasers. *Id.* at ¶¶ 43-46.

In July or August 2017, Defendant Katherine Flouton, the Chief Operating Officer at PKS, assigned review of a second product to a less experienced employee, even though Caiazzo Neff was the only employee to have experience with that particular product type. *Id.* at ¶¶ 51-52. Flouton expected Caiazzo Neff to have concerns about the product and reassigned the review to avoid her oversight. *Id.* at ¶ 52. Defendants offered a third product, again over Caiazzo Neff's concerns, because it was a condition precedent to PKS's acquisition by Defendants MHC Securities and Wentworth Management Services. *Id.* at ¶¶ 54-57. MHC and Wentworth subsequently acquired ownership stakes in PKS in November 2017. *Id.* at ¶ 66. Caiazzo Neff alleges upon information and belief that the transfer of ownership did not affect the day-to-day control of PKS. Am. Compl. ¶ 67.

In August 2017, Flouton and Defendant Lisa LaFond, PKS's Chief Compliance Officer, removed Caiazzo Neff from the compliance group and reassigned her to the role of Internal Auditor/Internal Audit Department. *Id.* at ¶ 58. Flouton and LaFond informed Caiazzo Neff that the reassignment was due to FINRA requirements that prohibited the compliance department from performing internal auditing. *Id.* Caiazzo Neff was to hold sole responsibility for internal audits, a task previously completed by eight to ten employees. *Id.* at ¶ 59. Caiazzo Neff believes that Defendants were attempting to force her into resigning from her position. *Id.* Caiazzo Neff was also removed from her role as the Cybersecurity Liaison with IT in November 2017 after being removed from a conference call by Defendant J. Peter Purcell, the Chief Executive Officer of PKS. *Id.* at ¶¶ 63-64.

Flouton emailed Caiazzo Neff in January 2018 requesting an update about the internal audit, which was due in February 2018. *Id.* at ¶ 68. Caiazzo Neff felt that the communication encroached on an auditor's proper independence, and she contacted a FINRA official to discuss her concerns. *Id.* at ¶ 69. Caiazzo Neff also contacted Defendant David Purcell, the General Counsel at PKS, to discuss similar concerns. *Id.* at 73-74. During Caiazzo Neff's conversation with David Purcell, he told her that "compliance offers [sic], under security laws really only had [sic] two choices if they find something problematic; report it or resign." *Id.* at ¶ 75.

Two days after her conversation with David Purcell, Flouton contacted Caiazzo Neff to terminate her employment. *Id.* at ¶ 76. Flouton informed Caiazzo Neff that the "new owners," who Caiazzo Neff understands as MHC, Wentworth, and their respective managing officers, Defendants Alex Markowits and Ryan Morfin. *Id.* at ¶ 77-78. Caiazzo Neff also believes that Defendants became aware of her communication with a FINRA official. *Id.* at ¶ 79.

Caiazzo Neff initiated this action on May 1, 2018, and filed an amended complaint on September 14, 2018. ECF No. 10. Caiazzo Neff named eleven defendants: PKS Holdings, LLC; PKS; MHC Securities; Wentworth Management, LLC; J. Peter Purcell; David Purcell; Lisa LaFond; Peter Sheehan; Alex Markowits; Ryan Morfin; and Katherine Flouton. Caiazzo Neff alleges four claims. Caiazzo Neff alleges that she was fired in retaliation for her whistleblowing activities in violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010. Pursuant to Pennsylvania state law, Caiazzo Neff alleges wrongful termination in violation of public policy, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress.

## III.    STANDARD OF REVIEW

### A.  Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

The motion to dismiss standard under Rule 12(b)(2) is as follows:

> When reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), I must accept the plaintiff's allegations as true and resolve disputed facts in favor of the plaintiff. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). However, once a defendant has raised a jurisdictional defense, the plaintiff must "prove by affidavits or other competent evidence that jurisdiction is proper." *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). If an evidentiary hearing is not held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *Id.* A plaintiff meets this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state.*" Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987).

*Campbell v. Fast Retailing USA, Inc.*, No. CV 14-6752, 2015 WL 9302847, at *2 (E.D. Pa. Dec. 22, 2015).

### B.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to

state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.   ANALYSIS

Defendants collectively move to dismiss Caiazzo Neff's Amended Complaint under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim for which relief can be granted.

### A.  Personal Jurisdiction

Defendants move to dismiss Caiazzo Neff's claims by challenging personal jurisdiction, asserting that none of the Defendants have sufficient contacts with Pennsylvania. Defs.' Mot. Dismiss 5, ECF No. 12. Caiazzo Neff asserts that PKS is subject to general jurisdiction in Pennsylvania because it is a registered corporation in Pennsylvania and that the other Defendants have sufficient minimum contacts with Pennsylvania to be subject to specific jurisdiction. Pl.'s Opp. 4-6, ECF No. 13.

When a defendant moves to dismiss by challenging personal jurisdiction, the plaintiff must meet the burden of showing that personal jurisdiction is appropriate in the forum state. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). She may do so by introducing "affidavits or other competent evidence." *Id.* When there is no evidentiary hearing, the plaintiff only must show "a prima facie case of personal jurisdiction." *Id.*

District courts may exercise personal jurisdiction to the greatest extent permissible under the long-arm statute of the state in which the court sits. *Id.* Pennsylvania's long-arm statute allows jurisdictional exercise "based on the most minimum contact with th[e] Commonwealth

allowed under the Constitution of the United States." *D'Jamoos v. Pilatus Aircraft, Ltd.*, 566 F.3d 94, 101 (3d Cir. 2009) (quoting 42 Pa. C.S. § 5322(b)) (internal quotation marks omitted).

There are two theories by which a court may find constitutionally sufficient contacts supporting the exercise of personal jurisdiction: general jurisdiction and specific jurisdiction. General jurisdiction is based on a defendant's "continuous and systematic contacts" with the forum state and allows personal jurisdiction over a defendant for any claim, whether the claim is related to the defendant's contacts with the forum state or not. *Metcalfe*, 566 F.3d at 334 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). To determine whether a defendant is subject to general jurisdiction, a court asks whether the defendant is "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For individuals, "at home" means their domicile, and for corporations, "at home" includes the place of incorporation or a primary place of business, among other possibilities. *Id.* at 137 (citing *Goodyear*, 564 U.S. at 924).

Specific jurisdiction permits a court to adjudicate when the defendant's conduct in the forum state makes it reasonably foreseeable that the defendant would be "haled into court" there. *D'Jamoos*, 566 F.3d at 105 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). To determine whether a defendant may be subjected to personal jurisdiction, the United States Court of Appeals for the Third Circuit has issued a three-part test. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). First, the defendant must have purposefully directed their activities toward the forum state. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, the claims must have arisen from the defendant's activities in the forum state. *Id.* (citing *Helicopteros*, 466 U.S. at 414). Finally, if the previous

conditions are met, exercise of jurisdiction must "comport with 'fair play and substantial justice.'" *Id.* (quoting *Burger King*, 471 U.S. at 476).

Jurisdictional analysis must be specific to each defendant. *Doe v. Hesketh*, 15 F. Supp. 3d 586, 592 (E.D. Pa. 2014) (citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 n.1 (3d Cir. 2004)). A plaintiff is required to show that each defendant moving to dismiss has sufficient contacts with the forum state, even when their corporate family collectively has the necessary contacts. *In re Chocolate Confectionary Antitrust Litigation*, 602 F. Supp. 2d 538, 559 n.17 (M.D. Pa. 2009). Therefore, the Court discusses each Defendant in turn.

### 1. PKS

This Court has specific jurisdiction over PKS. Specific jurisdiction requires: (1) sufficient minimum contacts with the forum state; (2) a nexus connecting the claims to the defendant's contacts, and if the first two conditions are satisfied, (3) consistency with traditional notions of fair play and substantial justice. *O'Connor*, 496 F.3d at 317.

PKS argues that Caiazzo Neff does not allege sufficient contacts to support the exercise of personal jurisdiction. Defs.' Reply 3, ECF No. 14. Caiazzo Neff alleges the following contacts in her amended complaint, none of are were specific to PKS: that "Defendants" hired her to work in Pennsylvania in March 2014, that "Defendants" operate twenty-five locations in Pennsylvania, that she conducted frequent audits at "Defendants'" Pennsylvania locations, that "Defendants" paid for and shipped office equipment to her Pennsylvania home, and that "Defendants" paid payroll taxes to the Commonwealth of Pennsylvania. Pl.'s Opp. 5.

The Amended Complaint makes these allegations against all Defendants collectively. Although the jurisdictional inquiry must be defendant-specific, the Court, drawing all inferences in Caiazzo Neff's favor, can fairly construe these allegations as describing the actions of PKS.

The allegations center around conduct by Caiazzo Neff's employer. The Amended Complaint identifies PKS as Caiazzo Neff's employer, stating that "[t]his case arises from Defendants unlawful termination of Ms. Caiazzo Neff from her employment at Purshe Kaplan Sterling Investments, Inc. (hereinafter, "PKS")." Defs.' Mot. Dismiss 2. Additionally, the allegations concerning "Defendants'" locations in Pennsylvania and shipping supplies to Caiazzo Neff are best interpreted as referring to PKS and not the other corporate defendants: PKS Holdings, LLC, is a holding company that wholly owns PKS, *see* Am. Compl. ¶ 8, and Defendants Wentworth Management and MHC Securities only acquired interests in PKS in November 2017, several years after PKS hired Caiazzo Neff, *see* Am. Compl. ¶ 66.

These alleged contacts are sufficient for this Court to exercise specific personal jurisdiction over PKS. When an employee works from a home office, the employer is not automatically subject to personal jurisdiction in the employee's home state. *See e.g. Randall v. Davin*, No. 13-cv-703, 2013 WL 6191344 (W.D. Pa. Nov. 26, 2013); *Connell v. CIMC Intermodal Equip.*, No. 16-CV-714, 2016 WL 7034407 (M.D. Pa. Dec. 2, 2016). However, the employer may be subject to personal jurisdiction where it furnished the employee's home office in the forum state. *Johnson v. Phelps*, No. 05-cv-5555, 2007 WL 1030086 at *4-5 (E.D. Pa. Mar. 30, 2007).

PKS argues that personal jurisdiction is not appropriate because Caiazzo Neff unilaterally chose her location, citing *Randall* and *Connell*. Defs.' Mot. Dismiss 6-7. Caiazzo Neff's allegations are distinguished from *Randall* and *Connell* because Caiazzo Neff alleges that she was hired to work in Pennsylvania and that she regularly performed audits at the Defendants' Pennsylvania locations. In *Randall* and *Connell*, the employees performed no work-related tasks for which their location was relevant.

When an employee's location provides benefit to the employer, personal jurisdiction can be appropriate. *Johnson*, 2007 WL 1030086 at *1. In *Johnson*, an employee was hired to work for a California-based consulting company from his Pennsylvania home. *Id.* His home address was listed in sales materials, and his ability to travel from his Pennsylvania home reduced client costs. *Id.* Caiazzo Neff alleges that Defendants advertise twenty-five locations in Pennsylvania, and that she regularly performed audits at these locations. Therefore, even if Caiazzo Neff was not soliciting sales in Pennsylvania, she was hired to work in Pennsylvania as a part of Defendants' activities directed toward the forum state. These allegations, accepted as true, satisfy the first element of jurisdictional analysis, showing that PKS had sufficient minimum contacts with the forum state.

The second element of the specific jurisdiction analysis examines whether the claims arise from the defendant's contacts with the forum state. *O'Connor*, 496 F.3d at 317. Here, Caiazzo Neff alleges that she conducted internal audits at Defendants' Pennsylvania locations, that she was wrongfully terminated due to her report to FINRA, and that her report to FINRA pertained to her internal auditing activities. To determine whether the claims are sufficiently related to the defendant's contacts with the forum state, the Third Circuit Court of Appeals has not issued a bright line rule. Instead, it has directed an analysis that requires a "closer and more direct causal connection than that provided by the but-for test." *Id.* at 323.

Caiazzo Neff's claims are directly related to her alleged responsibility for internal auditing at PKS's Pennsylvania locations. The chain of events leading to Caiazzo Neff's allegedly wrongful termination began when PKS made contacts with Pennsylvania by opening locations there and hiring Caiazzo Neff in a compliance role. Caiazzo Neff's claims, related to her auditing those Pennsylvania locations, resulted from PKS's contacts with Pennsylvania.

The third element ensures that the exercise of personal jurisdiction would comport with traditional notions of fair play. *Id.* at 317. To determine whether the exercise of jurisdiction would be consistent with notions of fair play, a court must consider "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *Id.* at 324 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Although PKS's corporate headquarters and the majority of its officers are located in New York, the other factors lean towards allowing this dispute to be adjudicated in Pennsylvania. The burden on PKS would not be significant. PKS is alleged to operate twenty-five business locations in Pennsylvania; thus, PKS has some presence and resources in Pennsylvania. PKS's corporate headquarters, allegedly in Albany, are also not prohibitively distant from the forum state. Further, any burden on PKS is at least countervailed by Caiazzo Neff's interest in obtaining convenient relief: as an individual plaintiff, litigating away from her home state of Pennsylvania would likely impose a burden on her.

Finally, Pennsylvania has a strong interest in ensuring that its residents are able to get relief for their lawful conduct. Caiazzo Neff alleges that she was wrongly fired from her job for reporting her employer's concerning conduct to a regulatory body. Pennsylvania would have an interest in ensuring protection for other similarly situated residents. In consideration of these factors, allowing litigation in Pennsylvania would be consistent with traditional notions of fair play as described in *O'Connor*.

Therefore, the Court finds that it has specific personal jurisdiction over Defendant PKS.[3]

## 2. PKS Holdings, LLC

Caiazzo Neff alleges that Defendant PKS Holdings, LLC, wholly owns Defendant PKS. However, "a foreign corporation is not subject to the jurisdiction of the forum state merely because of its ownership of the shares of stock of a subsidiary doing business in that state." *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 420–22 (E.D. Pa. 2005) (quoting *Lucas v. Gulf & Western Industries, Inc.*, 666 F.2d 800, 805–6 (3d Cir. 1981), *abrogated on other grounds by EF Operating Corp. v. American Bldgs.*, 993 F.2d 1046, 1049 (3d Cir. 1993)). The Third Circuit has not established a definitive test for determining when contacts may be imputed to a parent entity, but has provided some factors to be considered, such as "whether the subsidiary corporation played any part in the transactions at issue, whether the subsidiary was merely the alter ego or agent of the parent, and whether the independence of the separate corporate entities was disregarded." *CALA Diamonds, LLC v. HRA Grp. Holdings*, No. 17-CV-1136, 2017 WL 4222886, at *8 (E.D. Pa. Sept. 22, 2017) (citing *Lucas v. Gulf & W. Indus., Inc.*,

---

[3]     Because the Court finds that it has specific personal jurisdiction over PKS, it does not address Caiazzo Neff's argument that PKS's status as a registered corporation in Pennsylvania subjects it to general jurisdiction here. In *Sullivan v. A.W. Chesterton, Inc.*, No. 18-cv-3622, 2019 WL 2399738 (E.D. Pa. June 6, 2019), Senior Judge Eduardo C. Robreno held that Pennsylvania's statutory scheme requiring foreign corporations to register to do business and therefore consent to general personal jurisdiction in Pennsylvania is unconstitutional following the Supreme Court's holding in *Daimler* that a corporation is only subject to general jurisdiction where it is "at home." In *Williams v. Takeda Pharms. Am., Inc.*, Judge Gerald Pappert recognized but declined to follow Judge Robreno's analysis in *Sullivan*. No. 18-cv-4774, 2019 WL 2615947 at *3 n.4 (E.D. Pa. June 26, 2019). As a recent scholarly commenter has recognized, the Third Circuit Court of Appeals has not addressed the validity of consent-by-registration since its 1991 decision in *Bane v. Netlink, Inc.*, 924 F.2d 637 (3d Cir. 1991). *See* Brett E. Broczkowski, *Apparently, There Are Places Like Home: A Path to Propriety for Consent-by-Registration Jurisdiction in the Third Circuit*, 64 Vill. L. Rev. 101, 104 (2019). Judge Robreno certified the question of whether the Pennsylvania statutory scheme remains constitutional after *Daimler* to the Third Circuit Court of Appeals on June 25, 2019. *See* Docket No. 18-cv-3622, ECF No. 201.

666 F.2d 800, 806 (3d Cir. 1981)). Furthermore, "contacts should be imputed when the subsidiary was either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself." *Action Mfg. Co.*, 375 F. Supp. 2d at 421.

With respect to PKS Holdings, LLC, the Amended Complaint alleges only that it wholly owns PKS. Am. Compl. ¶ 7. Caiazzo Neff does not argue alter ego, lack of independence, that PKS was established to conduct activities PKS Holdings would have had to perform, or any other basis for imputing PKS's contacts to PKS Holdings. Therefore, the Court lacks personal jurisdiction over PKS Holdings, LLC.

### 3. MHC Securities, LLC and Wentworth Management, LLC

Defendants argue that the Amended Complaint makes no allegations specific to MHC Holdings or Wentworth Management that establish sufficient minimum contacts with Pennsylvania to establish personal jurisdiction. Indeed, the allegations concerning MHC Holdings and Wentworth Management's contacts with Pennsylvania are limited to their purchase of PKS Securities and their alleged decision to terminate Caiazzo Neff. Caiazzo Neff asserts that jurisdiction over "the remaining defendants," presumably including MHC and Wentworth, would be appropriate based on allegations lodged against "Defendants" generally. Defs.' Mot. Dismiss 5. However, her memorandum merely repeats allegations from the Amended Complaint without attributing any action to a specific Defendant.

As explained above, jurisdictional inquiries are to be conducted with specificity for each individual defendant. *Doe*, 15 F. Supp. 3d at 592 (citing *Miller Yacht Sales, Inc.*, 384 F.3d at 95 n.1). In the context of related corporate entities, plaintiffs must show the sufficiency of each defendant's contacts with the forum state, even when their corporate family collectively has the necessary contacts. *In re Chocolate Confectionary Antitrust Litigation*, 602 F. Supp. 2d at 559

n.17. Caiazzo Neff did not make allegations against MHC or Wentworth which would allow individualized jurisdictional analysis. Although Caiazzo Neff alleges that MHC and Wentworth purchased an ownership stake in PKS, she does not make clear which, in any, of PKS's contacts with Pennsylvania may be fairly attributed to MHC or Wentworth as owners of PKS. Therefore, Caiazzo Neff has failed to carry her burden of proving this Court's personal jurisdiction over MHC and Wentworth.

### 4. Individual Defendants

Caiazzo Neff makes two arguments in favor of exercising personal jurisdiction over the seven individual defendants. First, she seems to suggest that the individual defendants are subject to specific personal jurisdiction in Pennsylvania for the same reasons as PKS. Caiazzo Neff emphasizes that "Defendants" hired Caiazzo Neff to work from her home in Pennsylvania, shipped office equipment to her there, operated branch locations in Pennsylvania where Caiazzo Neff conducted audits, and paid payroll taxes in Pennsylvania. Pl.'s Opp. 5.  However, Caiazzo Neff does not allege facts that suggest these contacts can be imputed to any individual Defendant. Although the Court can reasonably attribute these contacts to PKS as Caiazzo Neff's employer, Caiazzo Neff offers no allegations that allow the Court to determine which, if any, of the individual Defendants participated in PKS's contacts with Pennsylvania. The Court cannot properly assess jurisdictional claims against any defendant without defendant-specific allegations. *See In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 559 n.17 (jurisdictional analysis must be specific to each defendant). Therefore, she has failed to allege the individual Defendants' sufficient minimum contacts with Pennsylvania.

Second, Caiazzo Neff asserts personal jurisdiction over the individuals based on their tortious conduct directed at Pennsylvania. Caiazzo Neff cites Pa. C.S. § 5322(a)(4) of

Pennsylvania's long-arm statute, which permits Pennsylvania courts to exercise personal jurisdiction over any person whose tortious conduct committed outside of Pennsylvania causes harm in Pennsylvania. Caiazzo Neff suggests that the individual Defendants caused her tortious injury by their actions outside of Pennsylvania, bringing her claims within the reach of Section 5322(a)(4). However, exercising jurisdiction still must satisfy constitutional due process. *See TNK Marine Transp., LLC v. Big 3 Diesel Repair, LLC*, No. 2:18-CV-01211-MJH, 2018 WL 6602214, at *3 (W.D. Pa. Dec. 17, 2018) ("Having settled that the Plaintiff's Complaint falls within the long-arm statute, the due process inquiry turns on a defendant's contacts with the forum state.") (citing *Pennzoil Products Co. v. Colelli & Associates, Inc.*, 149 F.3d 197 (3d Cir. 1998)).

Caiazzo Neff does not allege that the individual Defendants are subject to general jurisdiction in Pennsylvania and, as just discussed, she does not allege sufficient minimum contacts with Pennsylvania to allow specific jurisdiction. When a plaintiff alleges specific personal jurisdiction based on actions constituting an intentional tort and personal jurisdiction may not be asserted based on the defendant's contacts with the forum alone, the court must determine whether the "effects test" as articulated by the Supreme Court in *Calder v. Jones,* 465 U.S. 783 (1984), can change the outcome. In *Imo Industries, Inc. v. Kiekert AG,* the Third Circuit Court of Appeals held that a plaintiff asserting personal jurisdiction arising out of intentional torts can satisfy the "effects test" if the plaintiff shows that:

(1) The defendant committed an intentional tort;

(2) The plaintiff felt the brunt of the harm in the forum so that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;

(3) The defendant expressly aimed his tortious conduct at the forum so that the forum can be said to be the focal point of the tortious activity.

155 F.3d 254, 265-66 (3d Cir. 1998). "Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient to meet [the third] requirement. The defendant must manifest behavior intentionally targeted at and focused on the forum for *Calder* to be satisfied." *Id.*

With these standards in mind, the Court addresses Caiazzo Neff's allegations against each individual Defendant.

### a. J. Peter Purcell

The Amended Complaint alleges that J. Peter Purcell (hereafter, "J. Purcell") was a partner and the chief executive officer of PKS, that he had a supervisory relationship with Caiazzo Neff and that on one occasion, he ended Caiazzo Neff's participation in a conference phone call. There are no other allegations specific to J. Purcell in the Amended Complaint. These alleged contacts do not suffice to show J. Purcell's conduct was "expressly aimed" at Pennsylvania, as required by the Third Circuit Court of Appeals. *See Imo Indus.*, 155 F.3d at 266. *See also Jaipaul v. Pliant Corp.*, No. 07-cv-4031, 2008 WL 2746291 at *5 (E.D. Pa. July 14, 2008) (manager's phone calls and emails to employee in Pennsylvania office were not conduct "expressly aimed" at Pennsylvania for purposes of discrimination claim where plaintiff did not allege that any discriminatory conduct occurred during those communications). Therefore, this Court lacks jurisdiction over J. Peter Purcell.

### b. David Purcell

The Amended Complaint alleges that David Purcell (hereafter, "D. Purcell") was a partner and the General Counsel at PKS, that he had supervisory authority over Caiazzo Neff, and that he had a telephone conversation with Caiazzo Neff during which they discussed Caiazzo

Neff's concerns about internal audit independence. During this phone call, D. Purcell is alleged to have expressed his understanding that securities laws only allow compliance officers to report problematic conduct or resign from their position. Caiazzo Neff also alleges that she was terminated two days after this conversation with D. Purcell.

As discussed above, *Imo Indus.* requires allegations that the defendant committed an intentional tort, that the effects of the tort were felt in the forum state, and that the defendant's conduct was aimed at the forum state. 155 F.3d at 265-66. The Amended Complaint fails to allege that D. Purcell engaged in tortious conduct: it does not allege that D. Purcell knew of Caiazzo Neff's allegedly protected activity (contacting FINRA) when they spoke on January 29, 2018, or that D. Purcell had any role in her termination. The Amended Complaint also does not allege that D. Purcell knew Caiazzo Neff was in Pennsylvania or would feel the effects in Pennsylvania. Without allegations that D. Purcell played a role in the alleged tortious conduct, or that he targeted his activities toward Pennsylvania, he cannot be subjected to personal jurisdiction under the *Imo Indus.* effects test. For these reasons, this Court lacks personal jurisdiction over D. Purcell.

### c. Lisa LaFond

The Amended Complaint alleges that LaFond was the Chief Compliance Officer at PKS, that she had supervisory authority over Caiazzo Neff, that she reassigned Caiazzo Neff from a compliance role in August 2017, and that she was copied on an email from Katherine Flouton (a co-defendant) to Caiazzo Neff requesting internal audit updates. LaFond is not alleged to have played any role in Caiazzo Neff's termination. These contacts are not sufficient because no tortious conduct is alleged.

As in the above analyses, Caiazzo Neff must allege that LaFond committed an intentional tort, that the effects were felt in the forum state, and that LaFond's tortious conduct was "expressly aimed" at the forum state. *Imo Indus.*, 155 F.3d at 265-66. But as was the case with D. Purcell, the allegations fail to show that LaFond engaged in any tortious activity. Caiazzo Neff does not allege that LaFond's actions were motivated by protected activity or that LaFond was even aware of protected activity. Caiazzo Neff cannot make such an allegation because she had not reported PKS at the time of LaFond's alleged adverse actions. Therefore, this Court lacks personal jurisdiction over LaFond.

### d. Peter Sheehan

The Amended Complaint alleges that Sheehan was the Director of Trading at PKS, but includes no further allegations detailing Sheehan's contacts with Pennsylvania, or role in Caiazzo Neff's termination, or relationship with Caiazzo Neff. Because the Amended Complaint does not allege that Sheehan has any contacts to Pennsylvania, Caiazzo Neff cannot satisfy the *Calder* test with respect to Sheehan and the Court lacks personal jurisdiction over him.

### e. Alex Markowits and Ryan Morfin

The Amended Complaint alleges that Markowits was a managing partner at MHC Securities and that Markowits, as a "new owner" of PKS, made the decision to terminate Caiazzo Neff. There are no allegations showing direct contacts with Caiazzo Neff in Pennsylvania. The Amended Complaint alleges that Morfin was the Chief Executive Officer of Wentworth Management, that Wentworth obtained an ownership stake in PKS by and through Morfin, and that Morfin also participated in the decision to terminate Caiazzo Neff's employment at PKS. The Amended Complaint also alleges that both Markowits and Morfin had a role in requiring

certain product offerings as a condition of their purchasing PKS. Because Markowits and Morfin are similarly situated for jurisdictional purposes, they will be considered together.

As explained above, the *Imo Indus.* effects test requires that the defendant committed an intentional tort, that the effects were felt in the forum state, and that the defendants' conduct was "expressly aimed" at the forum state. *Imo Indus.*, 155 F.3d at 265-66. Here, the allegations against Markowits and Morfin are not sufficient to support a finding of personal jurisdiction. When the allegations against a defendant do not allege any specific acts within or targeted at the forum state, a plaintiff fails to establish personal jurisdiction. Caiazzo Neff's Amended Complaint lacks any allegations that connect Markowits or Morfin to Pennsylvania. Although the two defendants are alleged to have made the termination decision that is central to Caiazzo Neff's claims, they are not specifically alleged to have known that Caiazzo Neff was in Pennsylvania or that the effects would be felt in Pennsylvania. *See 3Lab, Inc. v. Kim*, No. 07-cv-1056 (SRC), 2007 WL 2177513 at *6 (D.N.J. July 26, 2007) (finding no personal jurisdiction over defendant in New Jersey where plaintiff did not allege that defendant committed any act there or knew that plaintiff lived there). Therefore, their actions would not be considered "expressly aimed" at the forum state, and the Court lacks personal jurisdiction over these individuals.

### f. Katherine Flouton

The Amended Complaint alleges that Flouton was the Chief Operating Officer at PKS, that Flouton exercised supervisory control over Caiazzo Neff, that on two occasions Flouton excluded Caiazzo Neff from reviewing certain products about which Caiazzo Neff had concerns, and that Flouton ultimately terminated Caiazzo Neff by phone call on January 31, 2018. These

contacts are sufficient to subject Flouton to personal jurisdiction in Pennsylvania under the *Calder* effects test.

As discussed, the *Calder* effects test requires: (1) that the defendant be alleged to have engaged in tortious conduct, (2) that the effects were felt in the forum state, and (3) that the defendant's alleged conduct was "expressly aimed" at the forum state. *Imo Industries*, 155 F.3d at 265-66.

Caiazzo Neff alleges that Flouton committed tortious conduct outside of Pennsylvania: Caiazzo Neff alleges wrongful discharge, which is a tort claim. *See Jackson v. Saber Healthcare Grp. LLC*, No. 13-CV-3690, 2013 WL 6210482, at *3 (E.D. Pa. Nov. 26, 2013) (citing *Yaindl v. Ingersoll–Rand Co. Standard Pump–Aldrich Div.*, 422 A.2d 611, 618 (Pa. Super. Ct. 1980)). Caiazzo Neff alleges that Flouton terminated her over the phone after the Defendants became aware of Caiazzo Neff's reporting to FINRA.

Caiazzo Neff suffered the full force of the harm in Pennsylvania because she worked in Pennsylvania and was physically present in Pennsylvania when she was fired. Finally, Flouton expressly aimed her alleged tortious conduct at Pennsylvania by communicating with Caiazzo Neff during her work in Pennsylvania and then by reaching out to this Commonwealth to terminate her over the phone. *See Jackson v. Saber Healthcare Grp. LLC*, No. 13-CV-3690, 2013 WL 6210482, at *3 (E.D. Pa. Nov. 26, 2013) (finding jurisdiction over defendant in wrongful discharge claim based on effects test where defendant called plaintiff in Pennsylvania to terminate her). *See also Chadwick v. St. James Smokehouse, Inc.*, No. 14-2708-WJM-MF, 2015 WL 1399121, at *5 (D.N.J. Mar. 26, 2015) (act of firing plaintiff by phone was "crucial act" that subjected defendants to personal jurisdiction for wrongful discharge claim). Therefore, the Court can exercise personal jurisdiction over Flouton based on the *Calder* effects test.

The Court finds that it lacks personal jurisdiction over all Defendants except PKS and Katherine Flouton, and therefore grants Defendants' motion to dismiss under Rule 12(b)(2) with respect to all Defendants but those two. The Court next considers Defendants' Rule 12(b)(6) motion.

### B. Failure to State a Claim

### 1. Dodd-Frank Retaliation

In Count I of her Amended Complaint, Caiazzo Neff brings a whistleblower claim under the Dodd-Frank Act's anti-retaliation provision, claiming that she was fired in retaliation for reporting PKS's alleged violations of securities laws to FINRA.

Defendants move to dismiss Caiazzo Neff's whistleblower claim because she alleges that she reported the potential violations to FINRA, not to the Securities and Exchange Commission (SEC), and therefore does not qualify as a "whistleblower" under the Dodd-Frank Act. Mot. Dismiss 8-10. Defendants rely on the Supreme Court's holding in *Digital Realty Trust, Inc. v. Somers*, in which the Court held that "to sue under Dodd-Frank's anti-retaliation provision, a person must first 'provid[e] . . . information relating to a violation of the securities laws to the Commission.'" 138 S. Ct. 767, 772-73 (2018) (quoting 15 U.S.C. § 78u-6(a)(6)). Therefore, an individual who has not reported a violation of the securities laws to the SEC falls outside the Act's definition of "whistleblower" and the anti-retaliation provision of the Dodd-Frank Act does not extend to such an individual. *Id.*

In her response, Caiazzo Neff asserts that her whistleblower claim survives the Supreme Court's holding in *Digital Realty Trust* because she reported violations to FINRA, which is an agency of the SEC. Pl.'s Opp. 6-7. A district court in the District of New Jersey, however, recently held that an employee does not meet the definition of "whistleblower" under Dodd-

Frank unless he reports his employer's misconduct directly to the SEC—even if he discloses the information to FINRA. *See Price v. UBS Fin. Servs.*, No. 17-cv-01882, 2018 U.S. Dist. LEXIS 66200 (D.N.J. Apr. 19, 2018) (finding that the Supreme Court was "unequivocal" in holding that an individual who has not reported a violation to the SEC falls outside the Dodd-Frank Act's scope).

The facts here are similar to those in *Price*. In *Price,* the plaintiff was terminated after he testified before FINRA about his employer's misconduct. But because he did not report to the SEC, the court in *Price* held that the plaintiff did not meet the definition of "whistleblower" under the Dodd-Frank Act. Similarly, here, Caiazzo Neff reported her employer's violations of securities laws to FINRA, but she is still not a "whistleblower" under the Dodd-Frank Act because she did not report to the SEC. Caiazzo Neff argues that her case is distinguishable from *Price*, where the plaintiff *testified* to FINRA instead of *reporting* to FINRA. Caiazzo Neff draws an immaterial distinction. The Supreme Court laid down an unequivocal rule in *Digital Realty Trust*: "Courts are not at liberty to dispense with the condition – tell the SEC – Congress imposed." 138 S. Ct. at 777. Caiazzo Neff did not tell the SEC; therefore, she is not a whistleblower under the Dodd-Frank Act, regardless of what specific conduct she claims is protected. Accordingly, she fails to state a retaliation claim, and the Court dismisses Count I of the Amended Complaint with prejudice.

### 2. Wrongful Termination

Count II of the Amended Complaint alleges wrongful termination in violation of public policy under Pennsylvania law.

Generally, an employer may terminate an at-will employee for any or no reason, and the employee has no right of action against the employer for wrongful termination. *See Geary v. U.S.*

*Steel Corp.*, 319 A.2d 174, 175 (Pa. 1974). One exception to this general rule is that termination of an at-will employment may give rise to a cause of action when the termination violates a clear mandate of public policy, but Pennsylvania courts have construed this public policy exception narrowly. *See id.* at 180; *Clay v. Advanced Comput. Applications, Inc.*, 559 A.2d 917, 918 (Pa. 1989) ("Exceptions . . . have been recognized in only the most limited circumstances, where discharges of at-will employees would threaten clear mandates of public policy."). The Superior Court of Pennsylvania has held that there are only a few narrow public policy exceptions, which fall into three categories. An employer cannot: (1) require an employee to commit a crime, (2) prevent an employee from complying with a statutorily imposed duty, or (3) discharge an employee when specifically prohibited from doing so by statute. *Shick v. Shirey*, 691 A.2d 511, 513 (Pa. Super. Ct. 1997); *compare Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119, 121 (Pa. Super. Ct. 1978) (finding a cause of action for wrongful discharge when an employee was discharged for performing statutorily obligated jury duty under 42 Pa. C.S. § 4501), *with Hineline v. Stroudsburg Elec. Supply Co.*, 559 A.2d 566, 569-70 (Pa. Super. Ct. 1989) (finding no cause of action for wrongful termination because the plaintiff had no authority or statutory right to disengage the allegedly illegal surveillance cameras installed by the employer).

Therefore, a private employer does not violate Pennsylvania's public policy by firing its at-will employee for whistleblowing except when the employee was under a statutory duty to report the conduct at issue. *See Donahue v. Fed. Express Corp.*, 753 A.2d 238, 244 (Pa. Super. Ct. 2000) (finding that a company defendant did not violate public policy when it fired an at-will employee who reported the company's unscrupulous practices to his supervisor because the employee was under no statutory duty to report); *see also Spierling v. First Am. Home Health Servs.*, 737 A.2d 1250, 1253-54 (Pa. Super. Ct. 1999) (affirming the dismissal of wrongful

termination claim because the plaintiff employee failed to demonstrate that she was under a statutory duty to report her employer's alleged Medicare fraud to federal investigators); *compare Hennessy v. Santiago*, 708 A.2d 1269, 1273-74 (Pa. Super. Ct. 1998) (holding that a counselor failed to state a wrongful termination claim when she was allegedly fired after reporting a rape of her patient to the District Attorney's office because she was under no statutory duty to report the rape to the authorities), *with Field v. Phila. Elec. Co.*, 565 A.2d 1170 (Pa. Super. Ct. 1989) (holding that the employee sufficiently stated a wrongful termination claim when he was allegedly terminated after reporting his employer's violations of federal law to the Nuclear Regulatory Commission because he was statutorily required to report those violations under the Energy Reorganization Act of 1974).

Here, Caiazzo Neff alleges that PKS terminated her after she reported PKS's violations of securities laws to FINRA. Pl.'s Opp. 10-11. She argues that she had a legal duty to report the alleged violations to FINRA under FINRA regulations. *Id.* But Pennsylvania courts have repeatedly rejected wrongful termination claims when a private employer discharged an employee for whistleblowing unless the employee had a statutory duty to report the employer's violations of laws. *See Donahue*, 753 A.2d at 244; *Spierling*, 737 A.2d at 1253-54. Similar to the plaintiff in *Spierling*, who failed to identify any statute that required her to report her employer's Medicare fraud to federal investigators, Caiazzo Neff fails to point to a statute that required her to report violations of securities laws to FINRA. *See* 737 A.2d at 1253-54. Nor does she offer any authority to suggest that FINRA regulations impose a statutory duty that brings whistleblowing within the public policy exception. Without such authority, this Court will not expand the limited scope of the public policy exception. Because Caiazzo Neff fails to allege that PKS offended public policy by terminating her, her wrongful termination claim is dismissed.

### 3. Breach of Implied Covenant of Good Faith and Fair Dealing

In her Amended Complaint, Caiazzo Neff alleges that PKS breached an implied covenant of good faith and fair dealing by terminating her without good cause. Defendants move to dismiss this claim because she was an at-will employee. Defendants rely on *Donahue*, in which the Pennsylvania Superior Court held that former employees "cannot as a matter of law maintain an action for breach of the implied duty of good faith and fair dealing, insofar as the underlying claim is for termination of an at-will employment relationship." 753 A.2d at 243. Therefore, Defendants contend, because Caiazzo Neff was an at-will employee, she cannot state this claim against PKS for terminating her without good cause. *See id.*

In her response, Caiazzo Neff argues that PKS breached an implied covenant of good faith and fair dealing by interfering with and prohibiting her job duties as an internal auditor. Pl.'s Opp. 12. She relies on *Somers v. Somers* and argues that the implied duty of good faith and fair dealing applies to at-will employment. *See* 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992) ("The duty to perform contractual obligations in good faith does not evaporate merely because the contract is an employment contract, and the employee has been held to be an employee at will."). But the holding in *Somers* does not provide that the duty of good faith and fair dealing applies to at-will employment relationships. *See id.*; *Donahue*, 753 A.2d at 242. Instead, it provides that the duty of good faith and fair dealing applies to "contractual terms that exist beyond the at-will employment relationship." *Donahue*, 753 A.2d at 242. In *Somers*, the at-will employee had an agreement with his employer to share fifty percent of net profits from a project, and the Court found that he could recover for breach of implied duties connected to that profit sharing provision. *See* 613 A.2d at 1212.

Here, Caiazzo Neff alleges that PKS systematically obstructed her from performing her job duties as an internal auditor. Pl.'s Opp. 12. However, she fails to point to a contractual term that existed beyond the at-will employment relationship—her central complaint is that PKS fired her, not that it breached any independent contractual duty. As a result, Caiazzo Neff fails to state a claim for breach of the implied covenant of good faith and fair dealing, and this claim is dismissed.

### 4. Intentional Infliction of Emotional Distress

Lastly, Caiazzo Neff alleges a claim of intentional infliction of emotional distress (IIED). To state an IIED claim, a plaintiff must allege that a defendant's intentional conduct, which was outrageous or extreme, caused severe emotional distress to the plaintiff. *See Reeves v. Middletown Athletic Ass'n. & Roy Jenderko*, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004). In addition, the plaintiff must allege that she suffered some type of resulting physical harm because of the defendant's outrageous conduct. *Id.* (holding that the plaintiff failed to state an IIED claim because she failed to allege what type of injury she suffered and the time at which she suffered injury in relation to the defendant's conduct).

Here, Caiazzo Neff alleges that she sustained pain and suffering and severe emotional distress as a result of defendants' outrageous conduct. Am. Compl. ¶ 112. However, she fails to allege that she suffered any type of resulting physical harm due to Defendants' conduct, and therefore she fails to allege an IIED claim. *See Reeves*, 866 A.2d at 1122.

Moreover, in her Amended Complaint, Caiazzo Neff states that Defendants intentionally engaged in outrageous conduct that caused her to suffer severe emotional distress, *see* Am. Compl. ¶ 112. However, she fails to plead factual content to support these conclusions. As previous courts have noted, "wrongful termination alone cannot justify a claim for IIED," and

"courts rarely find that employment decisions rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Rickerson v. Pinnacle Foods Inc.*, No. 217CV04469SDWLDW, 2017 WL 6034147, at *5 (D.N.J. Dec. 6, 2017) (quotations omitted). Because the Amended Complaint states legal conclusions without the support of factual allegations, it fails to state a cause of action for IIED. *See Hart v. O'Malley*, 647 A.2d 542, 553 (Pa. Super. Ct. 1994). Therefore, Defendant's 12(b)(6) motion is granted with respect to this claim.

### C.  Leave to Amend

Although Federal Rule of Civil Procedure 15 states that leave to amend "shall be freely given when justice so requires," dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). The decision whether to grant leave to amend is within the discretion of the court, *Foman v. Davis*, 371 U.S. 178, 182 (1962); however, district courts should provide an opportunity for leave to amend a complaint where the deficiencies warranting dismissal could be cured by the court, *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). The court finds that granting leave to amend the complaint in this case would be futile. Caiazzo Neff already amended her complaint once after Defendants filed a motion to dismiss which raised the same arguments this Court has just considered. *See* ECF Nos. 7-8. Caiazzo Neff's Amended Complaint did not remedy the deficiencies Defendants identified, which appear to be incurable. Accordingly, Caiazzo Neff's Amended Complaint is dismissed with prejudice. *See Perlmutter v. Salton, Inc.*, No. C.A. 09-690-GMS, 2010 WL 3834040, at *5 (D. Del. Sept. 24, 2010) (dismissing claims where plaintiff had already amended once in response to previous motion to dismiss and failed to correct deficiencies), *aff'd sub nom. Perlmutter v. Russell Hobbs, Inc.*, 450 F. App'x 161 (3d Cir. 2011).

**V.      CONCLUSION**

For the reasons expressed above, this Court lacks personal jurisdiction over all Defendants except PKS and Katherine Flouton, and Caiazzo Neff has failed to state a claim under either the Dodd-Frank Act or Pennsylvania state law. Defendants' motion to dismiss is granted. A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Court